ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| DENNIS COTTO ALVARADO<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | **TA2025RA00318** | *REVISIÓN ADMINISTRATIVA* procedente de Departamento de Corrección<br><br>Caso Núm.:<br>JIS2019G0012-0017<br>JLE2019G0310-0311<br><br>Sobre:<br>Bonificaciones |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 12 de diciembre de 2025.

Comparece Dennis Cotto Alvarado (señor Cotto o parte recurrente) mediante el presente recurso de *Revisión Administrativa* y solicita que revoquemos la *Respuesta* emitida por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación (División de Remedios Administrativos), el 29 de septiembre de 2025. En la referida *Respuesta*, la División de Remedios Administrativos le indicó a la parte recurrente que La Ley 87-2020 excluye a los MPC que estén sentenciados por los delitos de índole sexual (ofensores sexuales). En cuanto a la Ley Núm. 85-2024, expresó que las instrucciones de nivel central son que no se puede hacer mínimo a casos tales como el de la parte recurrente.

Por los fundamentos que expondremos a continuación, **CONFIRMAMOS** el dictamen administrativo recurrido.

**I.**

Según surge del expediente, el 13 de julio de 2023, enmendada el 24 de julio de 2023, el señor Cotto fue sentenciado a quince (15) años por infracción al Artículo 133 del Código Penal, 33 LPRA sec. 5194, así como diez (10) años por infracción al Artículo 58 Y 59 de la *Ley para la Seguridad, Bienestar y Protección de Menores*, Ley 246-2011, 8 LPRA sec. 1101 *et seq.*[1] Así las cosas, el 4 de diciembre de 2024, el Departamento de Corrección emitió una *Hoja de Control sobre Liquidación de Sentencia*, fechada el 26 de noviembre de 2024.[2] De esta, surge que el recurrente cumpliría la sentencia de quince (15) años en primer lugar, pero sin un mínimo. Esta sentencia quedaría cumplida el 5 de diciembre de 2034. En esa fecha, comenzaría a cumplir la sentencia de diez (10) años de los Artículos 58 y 59, *supra*, cuyo mínimo cumpliría el 5 de diciembre de 2040 y el máximo el 5 de agosto de 2042. Cabe destacar, que dicha fecha varía debido a las bonificaciones adicionales otorgadas por trabajos o estudios.

Inconforme, el 15 de septiembre de 2025, la parte recurrente presentó una *Solicitud de Remedio Administrativo* ante la División de Remedios Administrativos.[3] Mediante esta, solicitó la restitución de los beneficios aplicados a su sentencia, previo al año 2025. En específico, solicitó bonificaciones y la oportunidad de ser considerado ante la Junta de Libertad Bajo Palabra (JLBP). Alegó que fue

---

[1] *Sentencia Enmendada*, entrada núm. 1, apéndice núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] *Hoja de Control sobre Liquidación de Sentencia,* entrada núm. 1, apéndice núm. 1 en SUMAC.
[3] *Solicitud de Remedio Administrativo* entrada núm. 1, apéndice núm. 1 en SUMAC.

uso y costumbre la discusión y aplicación de bonificaciones regulares y extraordinarias que abonaban a una fecha mínima para la consideración ante la JLBP. No obstante, expresó que, en el 2025, tales beneficios le fueron quitados retroactivamente. Por otra parte, adujo que la Ley 85-2024 no le es aplicable y puede ser considerado ante la JLBP. Además, alegó que, basándose en la Ley 87-20, la administración de corrección eliminó retroactivamente el cómputo del mínimo en los cargos por el Artículo 133 del Código Penal, *supra*. Sostuvo que la División de Remedios Administrativos se basó en una ley *ex post facto* en violación al debido proceso de ley.

Tras evaluar la referida solicitud, el 7 de julio de 2021, la División de Remedios Administrativos emitió una *Respuesta*.[4] Mediante esta, le indicó a la parte recurrente que La Ley 87-2020 excluye a los MPC que estén sentenciados por los delitos de índole sexual (ofensores sexuales). Asimismo, expresó que, en cuanto a la Ley 85-2024, las instrucciones de nivel central son que no se puede hacer mínimo a los casos tales como el de la parte recurrente, debido a la Ley 266 y Ley 85-2024.

Insatisfecho, el 29 de octubre de 2025, el señor Cotto presentó el recurso de epígrafe. Mediante este, adujo que la División de Remedios Administrativos cometió los siguientes errores:

> Primer error: Cometió un grave error la División de Remedios Administrativos al quitarle aplicarle unas penalidades al recurrente que no estaban en vigor al momento de este haber sido sentenciado.
>
> Segundo error: Cometió un error la División de Remedios Administrativos al no considerar el beneficio de unas [b]onificaciones que estaban en vigor al

---

[4] *Respuesta*, entrada núm. 1, apéndice núm. 2 en SUMAC.

momento del [r]ecurrente haber sido sentenciado.

Tercer error: cometió un error la División de Remedios Administrativos al aplicar una [l]ey que no existía al momento de la comisión del delito y al emitirse la sentencia por el delito por el cual fue penalizado el aquí [r]ecurrente.

Cuarto error: Cometió un error la División de Remedios Administrativos [al] eliminar la [b]onificación del 25% de la [s]entencia y que esta no fuese en exceso de 15 años sin que se le proveyera al recurrente su [d]ebido [p]roceso de [l]ey.

Quinto error: Cometió un [e]rror la División de Remedios Administrativos al eliminar una [b]onificación que era parte integral de la [s]entencia dictada por el TPI.

Por su parte, el 8 de diciembre de 2025, la División de Remedios Administrativos compareció, por conducto de la Oficina del Procurador General, mediante un *Escrito en Cumplimiento de Resolución*.

Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso de epígrafe.

## II.

### -A-

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.,* dispone sobre el alcance de la revisión judicial de las determinaciones de las agencias. Tanto la referida ley, como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. *T-JAC, Inc. v. Caguas Centrum Limited,* 148 DPR 70, 80 (1999). Al respecto, es norma de derecho claramente establecida que

los tribunales apelativos han de conceder gran deferencia y consideraciones a las decisiones de los organismos administrativos en vista de la vasta experiencia y conocimiento especializado. *Graciani Rodríguez v. Garage Isla Verde*, LLC, 202 DPR 117, 126 (2019); *Mun. de San Juan v. Plaza Las Américas*, 169 DPR 310, 323 (2006); *Hernández Álvarez v. Centro Unido*, 168 DPR 592, 615-616 (2006). Por lo tanto, los tribunales deben ser cautelosos al intervenir con las decisiones administrativas. *Metropolitana, SE v. ARPE*, 138 DPR 200, 213 (1995); *Viajes Gallardo v. Clavell*, 131 DPR 275, 289-290 (1992).

Es por las razones expuestas que las decisiones de los foros administrativos están investidas de una presunción de regularidad y corrección. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008); *Vélez v. ARPE*, 167 DPR 684, 693 (2006); *Rivera Concepción v. ARPE*, 152 DPR 116, 123 (2000). La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales, a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *Misión Ind. PR v. JP*, 146 DPR 64, 130 (1998); *ARPE v. JACL*, 124 DPR 858, 864 (1989).

Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo v. Yiyi Motors, Motors*, 161 DPR 69, 76 (2004). Conforme a lo cual, habrá que determinar si la actuación de la agencia fue arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción. *Mun. de San Juan v. CRIM*, 178 DPR 164, 175 (2010). Por tanto,

la revisión judicial de una determinación administrativa se circunscribe a determinar si: (1) el remedio concedido por la agencia fue apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo, y (3) las conclusiones de derecho fueron correctas. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Torres Rivera v. Policía de PR*, 196 DPR 606, 626-627 (2016).

Por otra parte, nuestro Tribunal Supremo ha identificado circunstancias en que corresponde no observar tal deferencia. En específico, dicho alto foro ha reconocido que la referida deferencia a las determinaciones administrativas cederá cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación de la ley, y (3) ha mediado una actuación irrazonable o ilegal. *Acarón, et al v. DRNA,* 186 DPR 564, 584 (2012); *Marina Costa Azul v. Comisión*, 170 DPR 847, 852 (2007).

-B-

La Ley Núm. 116 de 22 de julio de 1974, según enmendada, 4 LPRA sec. 1101 *et seq*., conocida como *Ley Orgánica de la Administración de Corrección*, fue sustituida por el Plan de Reorganización Núm. 2-2011, 3 LPRA Ap. XVIII. En virtud del Plan de Reorganización Núm. 2-2011, *supra*, se creó el Departamento de Corrección y Rehabilitación como el organismo en la Rama Ejecutiva "responsable de implantar la política pública relacionada con el sistema correccional y de rehabilitación de adultos y menores,

así como de la custodia de todos los ofensores y transgresores del sistema de justicia criminal del país". Artículo 4 del Plan de Reorganización Núm. 2-2011, *supra*.

Entre las funciones, facultades y deberes del Departamento de Corrección se encuentran asegurar la aplicación correcta de los sistemas de bonificación por trabajo y estudio que permitan las leyes aplicables, entre otros. Artículo 5 del Plan de Reorganización Núm. 2-2011, *supra*. En lo pertinente, el sistema de rebaja de términos de sentencias se encuentra codificado en el Artículo 11 del Plan de Reorganización Núm. 2-2011, *supra*. El antes citado Artículo disponía originalmente el modo en que debían computarse las bonificaciones por buena conducta y asiduidad.

No obstante, el Artículo 11 del Plan de Reorganización Núm. 2-2011, *supra*, fue enmendado por la Ley Núm. 187-2012. Mediante dicha ley, la Asamblea Legislativa expresó que se excluía de los abonos que establece el Artículo 11 del Plan de Reorganización Núm. 2-2011, *supra*, toda convicción por abuso sexual infantil. Tal convicción incluye incurrir en conducta sexual en presencia de un menor y/o que se utilice a un menor, voluntaria o involuntariamente, para ejecutar conducta sexual dirigida a satisfacer la lascivia o cualquier acto que, de procesarse por la vía criminal, configuraría cualesquiera de los siguientes delitos: agresión sexual, actos lascivos, comercio de personas para actos sexuales, exposiciones obscenas, proposición obscena, producción de pornografía infantil, posesión y distribución de pornografía infantil, utilización de un

menor para pornografía infantil, envío, transportación, venta, distribución, publicación, exhibición o posesión de material obsceno y espectáculos obscenos, según han sido tipificados en el Código Penal de Puerto Rico.

Posteriormente, la Asamblea Legislativa de Puerto Rico nuevamente enmendó el mencionado Artículo, mediante la Ley Núm. 87-2020, con el fin de extenderle a toda la población correccional la oportunidad de solicitar la aplicación de las bonificaciones por buena conducta y asiduidad, sin distinción del Código Penal mediante el cual fueron sentenciados. No obstante, se mantuvo la exclusión de los abonos que establece el Artículo 11 del Plan de Reorganización Núm. 2-2011, *supra*, en lo relativo a toda convicción por abuso sexual infantil.

## -C-

La Ley Núm. 85-2022 tiene como propósito principal enmendar el Artículo 308 de la Ley Núm. 146-2012, 33 LPRA sec. 5416, conocida como el *Código Penal de Puerto Rico* (2012) y el Artículo 3 de la *Ley de la Junta de Libertad Bajo Palabra*, Ley Núm. 118-1974, según enmendada, 4 LPRA sec. 1501, *et seq*. La aludida pieza legislativa dispone en su *Exposición de Motivos* que la misma se aprobó como "una manera justa, retributiva y rehabilitadora, que le permita a aquella persona convicta por varios delitos el poder ser considerada para libertad bajo palabra al cumplir con los términos de la sentencia más onerosa relacionada directamente con alguno de los delitos por los cuales fue encontrado culpable." Esto, debido a que cuando se imponen sentencias consecutivas que pueden llegar a acumular cientos de años de cárcel, los reclusos se encuentran sometidos a cumplir una sentencia de por vida sin la

posibilidad de ser considerado para los beneficios de libertad bajo palabra.

La Sección 1 de la Ley Núm. 85-2022 enmendó el Artículo 308 del Código Penal, para que lea como sigue:

Artículo 308. – Términos para cualificar para consideración de la Junta de Libertad Bajo Palabra.

Toda persona convicta bajo las disposiciones de este Código podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir el setenta y cinco por ciento (75%) del término de reclusión impuesto. Este cómputo nunca excederá de quince (15) años cuando se trate de un adulto o de cinco (5) años cuando se trate de un menor sentenciado y procesado como adulto en delitos para los cuales al realizarse el cómputo jurisdiccional para cualificar ante la consideración de la Junta de Libertad Bajo Palabra este sea mayor a lo requerido para delitos con pena fija señalada en el tipo de cincuenta (50) años.

En delitos graves cuyo término de reclusión señalada en el tipo sea de cincuenta (50) años, la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir quince (15) años de su sentencia o cinco (5) años si se trata de un menor de edad procesado y sentenciado como adulto.

En caso de la persona convicta de asesinato en primer grado, un delito cuya pena sea de noventa y nueve (99) años o reincidencia habitual la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra, al cumplir veinticinco (25) años de su sentencia, o diez (10) años, si se trata de un menor de edad procesado y sentenciado como adulto. Las personas convictas al amparo del inciso (c) del Artículo 93 estarán excluidas del privilegio de libertad bajo palabra.

En aquellos procesos judiciales en que se encuentre al acusado culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, la persona convicta tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los delitos cometidos. Cuando más de uno de los delitos cometidos conlleve la misma pena, la persona convicta cualificará para el

beneficio de libertad bajo palabra con el mero hecho de haber cumplido con el término de una de ellas. Lo dispuesto en este párrafo será de aplicabilidad, independientemente si la Ley en virtud de la cual resulta convicto, sea una Ley Penal Especial. Sección 1 de la Ley Núm. 85-2022.

Por otro lado, la Sección 2 enmendó el Artículo 3 la Ley Núm. 118-1974, *supra*, estableciendo que en los procesos judiciales en que el acusado sea encontrado culpable por más de un delito y se le imponga una sentencia a ser cumplida consecutivamente, tendrá derecho a cualificar para Libertad Bajo Palabra al cumplir con el término concerniente de la pena mayor recibida por alguno de los delitos cometidos. Así pues, cuando más de uno de los delitos cometidos conlleve la misma pena, la persona convicta cualificará para el beneficio de libertad bajo palabra por el mero hecho de haber cumplido con el término de una de ellas. Esto independientemente se trate de una ley penal especial.

Por último, y en lo que respecta a la Sección 3 de la mencionada ley, se dispone lo siguiente:

> Esta Ley aplicará de manera retroactiva, independientemente del Código Penal o Ley Penal Especial vigente al momento de los hechos delictivos, siempre y cuando resulte favorable para la persona condenada. Las cláusulas de prohibiciones absolutas de libertad bajo palabra en los delitos de leyes penales especiales no serán aplicables al caso de menores juzgados y sentenciados como adultos cuando contravengan lo aquí establecido.

> La Ley 85-2022 no surtirá efecto en el cálculo de la sentencia de las personas convictas por los delitos de agresión sexual en todas sus modalidades, agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil, indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar

sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012.

Por su parte, la Ley Núm. 85-2024, enmendó la Ley Núm. 85-2022 para aclarar y delimitar el alcance de la Ley Núm. 85-2022. Mediante la antes citada ley, se reafirmó que las personas convictas por los delitos de agresión sexual en todas sus modalidades, agresión sexual conyugal, actos lascivos, violación, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil, incluyendo sus tentativas, no podrán beneficiarse del privilegio de libertad bajo palabra, indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia. Además, se aclara que la Ley 85-2022 no aplicará retroactivamente a las personas convictas por estas actuaciones delictivas, conforme a la clara intención de la Asamblea Legislativa de no extender el privilegio de libertad bajo palabra a los ofensores de ley descritos anteriormente.

-D-

Como norma general, la ley aplicable a unos hechos delictivos es aquella vigente al tiempo de cometerse el delito. *Pueblo v. González*, 165 DPR 675, 684 (2005); *Pueblo v. Rexach Benítez*, 130 DPR 273, 301 (1992). La excepción a esta norma es el principio de favorabilidad consagrado en el Art. 4 del Código Penal de 2012, 33 LPRA sec. 5004, el cual establece lo siguiente:

> La ley penal aplicable es la vigente al momento de la comisión de los hechos.

> La ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito. En consecuencia, se aplican las siguientes normas:

(a) Si la ley vigente al tiempo de cometerse el delito es distinta de la que exista al procesar al imputado o al imponerle la sentencia, se aplicará siempre la ley más benigna.

(b) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley más benigna en cuanto a la pena o al modo de ejecutarla, se aplicará retroactivamente.

(c) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley que suprime el delito, o el Tribunal Supremo emite una decisión que despenalice el hecho, la pena quedará extinguida y la persona liberada, de estar recluida o en restricción de libertad.

En estos casos los efectos de la nueva ley o de la decisión judicial operarán de pleno derecho.

En esencia, el principio de favorabilidad establece que cualquier acusado tiene derecho a recibir el beneficio provisto por una ley posterior, siempre que ello resulte más favorable que lo dispuesto en la ley vigente al momento de la supuesta comisión de los hechos. *Pueblo v. Hernández García*, 186 DPR 656, 673 (2012); *Pueblo v. González*, *supra,* a la pág. 685. Dicho de otra manera, este principio "ordena la aplicación retroactiva de leyes penales más favorables, lo que, a su vez, implica aplicar una ley cuya vigencia es posterior al acto u omisión realizado". *Íd.*

Ahora bien, es preciso señalar que el referido principio no es absoluto, ya que, al carecer de rango constitucional, su aplicación está dentro de la prerrogativa total del legislador. *Íd.* Adviértase que, en nuestro ordenamiento jurídico, la intención legislativa de imponer limitaciones al principio de favorabilidad se manifiesta mediante la incorporación de cláusulas de reserva en los cuerpos legales

penales. *Íd.* a las págs. 698-699; D. Nevares-Muñiz, *Derecho Penal Puertorriqueño*, 7ma ed. Rev., San Juan, Instituto para el Desarrollo del Derecho, Inc., 2015, pág. 102.

Particularmente, el Tribunal Supremo de Puerto Rico ha pronunciado que:

> [L]as cláusulas de reserva … impiden que una nueva ley penal que resulte ser más favorable a un acusado, convicto o sentenciado, sea aplicada de forma retroactiva, aun cuando la nueva ley derogue o enmiende una ley anterior; esto a su vez supone mantener vigentes las disposiciones legales que regían unos actos delictivos sin tomar en consideración que éstas hubiesen sido derogadas o enmendadas por una ley penal posterior más favorable. Pueblo v. González, supra, págs. 694-695.

En cuanto a la interpretación judicial de las cláusulas de reserva, nuestro más Alto Foro ha resuelto que los tribunales deben preguntarse "si debe aplicarse una nueva ley en reconocimiento de la voluntad del legislador de derogar una ley anterior o aminorar los efectos de una pena, o si la cláusula de reserva debe entenderse a los efectos de que la intención del legislador es que la nueva ley tenga sólo efecto prospectivo". *Pueblo v. González, supra* a la pág. 689. La opinión, a su vez, especificó que "la intención legislativa deberá prevalecer siempre y cuando ésta no sobrepase los límites constitucionales". *Íd.* a las págs. 695-696.

### III.

A continuación, discutiremos en conjunto todos los señalamientos de error formulados por la parte recurrente, debido a que se encuentran estrechamente relacionados. Mediante estos adujo, en esencia, que la División de Remedios Administrativos erró        al

aplicarle unas penalidades que no estaban en vigor al momento de haber sido sentenciado. Asimismo, sostuvo que incidió al no considerar el beneficio de unas bonificaciones que estaban en vigor al momento de la parte recurrente ser sentenciada, en violación del principio de favorabilidad. Al respecto, argumentó que, según la legislación existente al momento de ser sentenciado, tendría derecho a ser considerado por la JLBP una vez extinguida el 75% de su condena, cuyo término no excedería de quince (15) años. Además, planteó que la División de Remedios Administrativos erró ya que se ha regido por una ley *ex post facto* al aplicar una ley que no existía al momento de la comisión del delito. Finalmente, señaló que erró la División de Remedios Administrativos al eliminar la bonificación del 25% de la sentencia sin que se le proveyera su debido proceso de ley. Sin embargo, determinamos que estos errores no se cometieron. Veamos.

En el presente recurso, el señor Cotto presentó una *Solicitud de Remedios Administrativos* en la que solicitó bonificaciones y la oportunidad de ser considerado ante la JLBP. Asimismo, alegó que fue excluido de las bonificaciones regulares y extraordinarias que abonaban a una fecha mínima para la consideración ante la JLBP. Explicó que, basándose en la Ley 87-2020, la administración de corrección eliminó retroactivamente el cómputo del mínimo en los cargos por el Artículo 133 del Código Penal de 2012, *supra*. Por otra parte, adujo que la Ley 85-2024 no le era aplicable y podía ser considerado ante la JLBP.

En primer lugar, debemos destacar que, en lo pertinente a las bonificaciones solicitadas por el señor

Cotto, al momento de la comisión de los hechos delictivos en el año 2017, este estaba excluido de recibir bonificaciones por buena conducta y asiduidad por el delito del Artículo 133 del Código Penal de Puerto Rico, *supra*, conforme el Artículo 11 del Plan Núm. 2-2011, *supra*. Por lo tanto, carece de méritos el argumento de la parte recurrente en cuanto a que la División de Remedios Administrativos se ha regido por una ley *ex post facto* al aplicar la Ley 87-2020. Lo anterior, debido a que la parte recurrente siempre ha estado excluida de recibir las bonificaciones, a tenor con la Ley Núm. 187-2012. Por lo tanto, la Ley Núm. 87-2020 no eliminó retroactivamente las bonificaciones que la parte recurrente reclama, toda vez que nunca ha sido elegible para recibir las mismas desde la fecha en que cometió los hechos delictivos. Ante ello, carece de mérito las alegaciones de la parte recurrente en cuanto a que se le violentó el debido proceso de ley al quitarle dichas bonificaciones. Asimismo, no procede el argumento en cuanto a la aplicación *ex post facto* de la Ley Núm. 87-2020.

Por otra parte, con respecto al término para ser elegible ante la JLBP, la Ley Núm. 85-2022, según reiterada por la Ley Núm. 85-2024, dispuso que las personas convictas por el delito de actos lascivos resultan excluidas de ser elegibles a la libertad bajo palabra. Por ende, los cómputos de la Ley Núm. 85-2022 para ser elegible ante la JLBP, no le eran aplicables a la parte recurrente. Lo anterior, toda vez que La Ley Núm. 85-2024 introdujo una cláusula de reserva para precisar que las disposiciones de la Ley Núm. 85-2022 no

aplicarían retroactivamente a las personas confinadas por, entre otros, el delito de actos lascivos. En vista de que dicha ley contiene una cláusula de reserva, no constituye una violación al principio de favorabilidad ni al principio contra leyes *ex post facto* el que la sentencia de quince (15) años de la parte recurrente no tenga un mínimo para comparecer ante la JLBP, por este delito estar excluido del privilegio de libertad bajo palabra.

En virtud de la normativa antes reseñada, la Evaluadora correctamente razonó que La Ley 87-2020 excluye a los MPC que estén sentenciados por los delitos de índole sexual (ofensores sexuales). Asimismo, expresó que, en cuanto a la Ley 85-2024, las instrucciones de nivel central son que no se puede hacer mínimo a casos tales como el de la parte recurrente.

En vista de lo anterior, concluimos que el dictamen administrativo recurrido, en efecto, encuentra apoyo en la normativa vigente. La División de Remedios Administrativos actuó correctamente al concluir que la parte recurrente está excluida de las bonificaciones del Artículo 11 del Plan Núm. 2-2011. Ello, toda vez que, conforme la Ley Núm. 87-2020, las personas convictas por actos lascivos se encuentran excluidas de dichas bonificaciones. Asimismo, la División de Remedios Administrativos no incidió al concluir que las instrucciones de nivel central son que no se puede hacer mínimo a ser elegible a la JLBP. Ello ya que, de conformidad con la Ley 85-2024, a las personas convictas por ciertos delitos, tales como actos lascivos, no les aplicaría el nuevo cómputo del mínimo establecido en la

Ley Núm. 85-2022 para elegibilidad al privilegio de libertad bajo palabra.

De este modo, debemos dereferencia al razonamiento formulado por la División de Remedios Administrativos al evaluar la *Solicitud de Remedios Administrativos* instada por la parte recurrente. Ello, en la medida que, como indicáramos, se ajusta a la normativa aplicable a su situación particular. Consecuentemente, procede confirmar el dictamen administrativo recurrido.

**IV.**

Por los fundamentos antes expuestos, se **CONFIRMA** el dictamen administrativo recurrido.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones